■ In the Matter of LOUIS J. LEFKOWITZ, Attorney-General of the State of New York, on Behalf of the PEOPLE OF THE STATE OF NEW YORK, Respondent, v. BORIS J. BURDEN et al., Appellants.— Judgment unanimously reversed on the facts and the law and a new trial ordered, without costs and without disbursements. Pending the trial the injunctive provisions of the judgment are to remain in effect. The decision is without prejudice to applications for discovery or for examination before trial and, if so advised, for an application to amend to bring the proceeding under article 10-A of the Social Welfare Law. Turnover of the funds to the Welfare Department is stayed pending the new trial. In this action for an injunction pursuant to subdivision 12 of section 63 of the Executive Law the Attorney-General's proof is lacking in several respects. What the Attorney-General sought to prove was the fraudulent solicitation of funds for charitable purposes. What the statute is designed to prevent is persistent fraud in the conduct of a business (*Matter of Kates* v. *Lefkowitz,* 28 Misc 2d 210; *People* v. *B. C. Associates,* 22 Misc 2d 43). It is doubtful, to say the least, whether the solicitation of funds for a charitable purpose is, to use the statutory words, the " carrying on, conducting or transaction of business ". Conceivably, it may be, as where a professional solicitor engages in fund raising for a fee. Undoubtedly as to him it is a business, and if he uses fraudulent means he might well be enjoined. But where the representatives of the charity itself do so, it would appear that this is not an undertaking engaged in for profit and not a business. Even though these representatives may divert the funds collected to their own use, or even though the so-called charity is a sham, it would not appear that a business practice is involved. It would appear that the appropriate statute for actions of this character would be article 10-A of the Social Welfare Law. Regardless of what statute the proceeding is brought under, the proof was less than satisfying. It was established that the defendant Burden is an ordained priest of the Russian Orthodox Church. For a period he was the pastor of St. Mark's Church, located at 142 Broome Street in Manhattan. In 1948 the church building was gutted by fire. From that time on it ceased to be a church even in the sense of ecclesia. · The members of the congregation became affiliated with other churches of the same general denomination. Defendant Burden rented premises in a store and a hotel room, from which, admittedly, campaigns for the solicitation of funds were carried on· by mail

and telephone. Burden hired two others, the defaulting defendants, to assist him in this operation. There is no proof whatsoever as to what these funds were solicited for or what the solicitors told the prospective donees. Petitioner took the year 1962 as a basis for the establishing of its claims. During the year there was a bank account in the name of St. Mark's Church. It was established that all of the funds collected went into this account, but it is typical of the lacunae with which this case is infested that not even the name of the bank was known. During the year there was deposited in this account $54,623.92. However, defendant testified without contradiction that there were deposits in the account resulting from sales of property belonging to another organization of $19,972.66, leaving a balance of $34,651.26 which was the proceeds of solicitation. Of this sum petitioner concedes that $1,495.39 was disbursed for charitable purposes — mostly gifts of food and toys at Christmans and Easter. Of the balance of $33,155.87, $17,320 was withdrawn by checks drawn to cash, $3,798.02 by checks drawn to unidentified payees, and the balance of $12,037.85 either to expenses or purposes which were not ascertained. While defendant made vague assertions as to the expenditures, no explanation worthy of the name was given. This is in contrast to the explanation of the deposits from other sources, which was exact and prima facie satisfactory. Adopting the assumption which seemed to prevail at the trial that the purpose of the solicitations was to provide the poor of the parish with aid in the form of food, children's gifts and the like, the utterly disproportionate sum shown to have been used for that purpose and the very large sums in comparison devoted to other or untraceable purposes could make out a prima facie case that the latter sums were converted or at least diverted from the purpose for which they were contributed. A more detailed audit by the use of discovery and examination before trial would most probably establish with greater certainty that the funds were or were not used for the purposes for which they were donated. Defendant raised irrelevant issues at the trial which were explored at intolerable lengths. Such questions as the standing of defendant as an ordained minister, his tribulations with the executive authorities of the church, the history of the predecessor churches to St. Mark's, and the many varied and unusual real estate transactions incidental thereto, all may have a place elsewhere but not in this case. And in no case should the time be wasted as it was here by both sides in efforts to introduce patently incompetent evidence. No costs have been allowed because both the preparation and the trial were inadequate. Settle order on notice. Concur — Breitel, J. P., Valente, McNally, Stevens and Steuer, JJ. [43 Misc 2d 982.]